IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LEUNDAS TEAL # 456325, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:26-cv-00064 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| SGT. MS. f/n/u LABELLE, *et al.*, | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Leundas Teal, an inmate of the Trousdale Turner Correctional Center ("Trousdale Turner") in Hartsville, Tennessee, has filed a pro se complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. No. 1). He also has filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2).

The Court must resolve the filing fee before moving to the required screening of the prisoner complaint.

### I. FILING FEE

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation (Doc. No. 6), it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder

in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at Trousdale Turner to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust

fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. PLRA SCREENING OF THE COMPLAINT

The complaint is before the Court for an initial review pursuant to the PLRA, 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### A. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983, which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured

by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

**B. Facts Alleged in the Amended Complaint**

The allegations of the complaint are assumed true for purposes of the required PLRA screening.

The complaint alleges that, on July 17, 2025, at Trousdale Turner, Plaintiff did not feel well and believed that his blood pressure was high. He sought assistance from Ms. Bush, who was "doing pill call." (Doc. No. 1 at 3). She told Plaintiff to wait a few minutes.

Before Bush reached Plaintiff's cell, Plaintiff told Sergeant f/n/u Labelle that he needed his blood pressure medication because he was not feeling well. She told him "there was no open sick call." (*Id*.)

Bush arrived at Plaintiff's cell "[m]oments later" and took Plaintiff's blood pressure. It was "high." (*Id*.) Bush told Labelle to call medical and tell them that Plaintiff needed his medication.

Subsequently, there was confusion as to where Plaintiff was located when medical staff members were allegedly looking for him. According to Plaintiff, he was in his pod. While he was waiting for medical assistance, he told his cell mate that he was feeling lightheaded. He later woke up lying on the floor. His cell mate told him that he had fainted and hit his head and knee when he fell.

Some two hours later, Sergeant Labelle passed Plaintiff's cell, and Plaintiff's cell mate told her that Plaintiff had "passed out." (*Id.*) She told the cell mate to "keep an eye on him" and told Plaintiff to lie down. (*Id.*)

Other inmates got the attention of Ms. K, a nurse practitioner, who came to Plaintiff's cell, asked what happened, and left shortly thereafter. The inmates then got the attention of Ms. Monroe, who came to Plaintiff's cell and observed him "feeling cold and shaking." (*Id.* at 5). She checked Plaintiff's blood sugar, and it was normal. Plaintiff asked her for his blood pressure medication, and Monroe told him that "TDOC does not want to pay for it anymore." (*Id.*) She took Plaintiff to the infirmary.

After unidentified nurses checked Plaintiff's blood pressure, they returned him to his unit without examining him further or giving him any blood pressure medication. He told them his knee was hurting, and he was limping. Plaintiff did not receive his blood pressure for another two weeks. Plaintiff still has a painful limp and must use a cane when walking.

As relief, the complaint requests compensatory damages "in an amount to be determined at trial," a jury trial, an award of costs and expenses, and any other relief the Court deems appropriate. (*Id.* at 6).

## C. Analysis

The complaint names two Defendants: Sergeant f/n/u Labelle, a Trousdale Turner Corrections Officer, and Jane Doe ("Ms. K"), a Trousdale Turner nurse practitioner. (Doc. No. 1 at 2). Both Defendants are sued in their individual capacities only. (*Id.*)

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' towards the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v.*

*Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). An Eighth Amendment deliberate indifference claim against an individual actor has objective and subjective components. *Farmer*, 511 U.S. 825, 834; *Blackmore,* 390 F.3d 890, 895. The objective component requires showing "the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. 294, 298). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. Liberally construing the pro se complaint, Plaintiff alleges that his high blood pressure and loss of consciousness constitute sufficiently serious medical needs.

"The subjective component requires a plaintiff to show that 'each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it.'" *Greene v. Crawford Cnty, Mich.*, 22 F.4th 593, 605-06 (6th Cir. Jan. 4, 2022) (quoting *Griffith v. Franklin Cnty, Ky.*, 975 F.3d 554, 568 (6th Cir. Sept. 21, 2020)). This showing "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, and is instead "equivalent to criminal recklessness[,]" *Greene*, 22 F.4th at 606 (quoting *Griffith*, 975 F.3d at 568).

The Court finds that Plaintiff's high blood pressure and loss of consciousness constituted sufficiently serious medical needs. *See Rouster*, 749 F.3d at 446; *Glenn v. McClellan*, 749 F.Supp.3d 796, 806 (E.D. Mich. 2024) (finding that "a loss of consciousness clearly is a serious medical need because it is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'") (quoting *Blackmore*, 390 F.3d 890, 899); *Wiertella v. Lake Cnty., Ohio*, No. 1:20-cv-2739, 2024 WL 1282715, at *12 (N.D. Ohio Mar. 26, 2024) (finding hypertension to be an objectively serious medical need).

As to Defendant Sergeant Labelle's state of mind, the complaint alleges that Sergeant Labelle secured no medical assistance for Plaintiff after he told her he was not feeling well, again after a colleague told her that she needed to call the medical staff because Plaintiff needed his blood pressure medication, and again after Plaintiff's cell mate told her that Plaintiff had passed out and hit his head. Instead, Sergeant Labelle told Plaintiff to lie down and told his cell mate to keep an eye on him. The Court finds that these allegations, "if true," could show that "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. Consequently, the Plaintiff's claim against Defendant Sergeant Labelle in her individual capacity states an Eighth Amendment claim upon which relief can be granted, and this claim shall proceed.

As to the state of mind of Jane Doe Defendant, identified by Plaintiff as nurse practitioner "Ms. K", the complaint alleges that after Plaintiff lost consciousness and fell, other inmates obtained the attention of Ms. K, who came to Plaintiff's cell, asked what happened, and left shortly thereafter—rendering no aid whatsoever. As with Defendant Labelle, the Court finds that these allegations, "if true," could show that Ms. K "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. Consequently, the Plaintiff's claim against Defendant Jane Doe aka Ms. K in her individual capacity states an Eighth Amendment claim upon which relief can be granted, and this claim, too, shall proceed. *See Glenn*, 749 F.Supp.3d 796, 806 (finding that nurse's "only response to finding Glenn [the prisoner-plaintiff] on the floor . . . repeatedly fading in and out of consciousness" with an elevated blood pressure was to call a colleague and "send Glenn back to his cell with instructions to notify medical staff is his condition worsened" amounted to "care that is so cursory that amounts to no treatment at all").

Although courts generally do not favor use of "John Doe" or similar terms to identify a defendant, it is permissible when the defendant's identity is not known at the time the complaint is filed but may be determined through discovery. *Berndt v. Tennessee*, 796 F.2d 879, 882-84 (6th Cir. 1986). Accordingly, the Court concludes that it would be inappropriate to dismiss the claims against the "Jane Doe" Defendant at this juncture because of the likelihood that the identity of this Defendant will be determined during discovery, particularly since Plaintiff also identifies the individual as Trousdale Turner nurse practitioner "Ms. K." Plaintiff is forewarned, however, that process cannot be served upon the "Jane Doe" Defendant until the actual individual involved has been properly identified.

Plaintiff is put on notice of his obligation to exercise due diligence to take discovery and conduct a reasonable investigation to promptly determine the actual name of the "Jane Doe" Defendant and to file a timely motion pursuant to Federal Rule of Civil Procedure 15(a) for leave to amend his complaint to correctly identify this Defendant by her real name once her name is ascertained, and to effect timely service of process upon the individual, as required by Federal Rule of Civil Procedure 4(m).

### III. CONCLUSION

Having conducted the screening required by the PRLA, the Court finds that the allegations of the complaint state colorable Eighth Amendment deliberate indifference to serious medical needs claims under Section 1983 against Defendants Sergeant f/n/u Labelle and Jane Doe (aka Ms. K) in their individual capacities. This action shall proceed as to those claims and Defendants.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendants Labelle and Jane Doe. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the date of entry of this Order.

Failure to do so may result in the dismissal of this case. Service against Defendants may only be accomplished, however, if Plaintiff succeeds in identifying the individuals involved by their full names.

Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on Defendants Labelle and Jane Doe. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

If appropriate, the Magistrate Judge may provide for early limited discovery to ascertain the identity of the Jane Doe Defendant and establish a deadline by which Plaintiff may amend his complaint to identify the Doe and serve her with process.

The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he fails to keep the Clerk's Office informed of his current address.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE